## JONES et al v. COOK

No. 7424. Decided October 31, 1950. (223 P. 2d 423)

See 54 C. J. S., Limitations of Actions, Sec. 182. Executor as trustee of assets for devisees, and liable for conversion. 144 A. L. R. 866. See, also, 21 Am. Jur. 511.

*Elias Hansen,* Salt Lake City, for appellants.

*Christensen & Christensen,* Provo, for respondent.

McDONOUGH, Justice.

Plaintiffs sued for conversion of an automobile which they claimed they were entitled to receive as residuary legatees under the last will and testament of their father and mother. Defendant pleaded as a defense the statute of limitations and also that plaintiffs were barred by the probate proceedings. Plaintiffs appeal from the judgment in favor of defendant.

The father died in July, 1943, and the mother died in September, 1946. By the terms of the will the mother was granted a life estate in all real and personal property. The remainder in the real estate and in certain farm machinery was devised and bequeathed to defendant, and the remainder in the balance of the personalty and all bank accounts, was bequeathed to plaintiffs. One year after the death of the father, defendant qualified as executor under said will. As executor he did not list in the inventory nor refer to the automobile in controversy. Neither was any description of said vehicle contained in the inventory for inheritance tax appraisal. A decree of final distribution was entered on August 18, 1945, which reads in part as follows:

"IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DE-CREED that the final account of said executor, Mark B. Cook, be and the same is hereby approved, allowed and settled and that the residue of said estate of Mark Cook, deceased, as hereinafter particularly described, and *any and all other property not now known or discovered which may belong to said estate or in which said estate may have any interest* be, and the same is hereby distributed in accordance with said last will and testament and as hereinafter set out, to-wit: To Irene B. Cook, surviving widow of said deceased, all of the estate and property of said deceased for her use and benefit during her natural life, with the remainder or reversionary interest therein to be distributed as hereinafter specifically provided; * * * (Italics added).

Following a description of the real and personal properties as contained in the inventories, appears these two paragraphs in the decree of distribution:

"To MARK B. COOK, son of said deceased, the reversionary interest in all of the above described real estate, water stock and all farm machinery and equipment and livestock belonging to the estate or used in connection with said real estate, subject only to the life estate in Irene B. Cook, widow of said deceased;

"To LEAH C. JONES, MARTHA C. WHITING and LOUISE C. BEETON, daughters of said deceased, the reversionary interest in and to all of the rest, residue and remainder of the estate of said deceased, in equal undivided shares, subject, however, to be held by said Irene B. Cook, surviving widow of said deceased, during her natural life, who is entitled to the use and enjoyment of all of the income therefrom as long as she may live."

There is evidence that defendant paid the taxes on the automobile in controversy beginning with the year 1944, but during the period of time he was executor it was his duty to pay the personal property taxes to ■ conserve the personal estate. It is undisputed that the certificate of ownership was in the name of Mark Cook, the father, at the time of his death, and that such certificate had never been endorsed. The defendant as executor omitted any and all reference to said car in the preparation and verification of both inventories. He used the automobile part of the time, and he took the mother on some trips in it after the death of the father. The car was kept in a garage on the homestead of the parents most of the time. Defendant at that time had no passenger car of his own, but had a truck. Up to the time of trial the defendant made no claim to the effect that he acquired title by virtue of parol gift from his father in May, 1943. His defenses pleaded consisted of the claim that action was barred by the statute of limitations, sec. 104—2—24 (2), U. C. A. 1943, and that plaintiffs were estopped to claim title or to assert that said car was an asset of the estate of decedent by reason of their continued failure to complain of defendant's omission of any reference thereto in the probate proceedings.

At the trial defendant sought to set up an unpleaded defense that he acquired title by a parol gift two months before the death of Mark Cook. Defendant's wife testified that in May, 1943, the father came over to the home of defendant and requested defendant to take him for a ride in the car; that the witness was invited to go along; that the father then handed defendant the certificate of title to the automobile (which admittedly was never endorsed) and said: "Mark, here is the certificate of ownership and the extra set of keys to the car. I'm giving it to you with the understanding that you take mother and I at any time we want to go.": The witness later explained

that the father said he was *giving* the car to defendant with the understanding that defendant would take them for a ride whenever they (his parents) wanted to go.  She also testified that defendant took his parents for a ride at various times.  There was some testimony that part of the time the car was kept at defendant's home when he was using it and sometimes in the garage on the parent's premises.  Defendant did not tell plaintiffs at any time prior to trial that his father had made a gift of the car to him.  His wife testified that the father told her husband to say nothing to anyone about the matter.

The trial court found in favor of defendant on both pleaded defenses, but refused to make any finding on the unpleaded defense of acquisition of title by gift.  On this appeal, plaintiffs contend that (a) irrespective of the failure of defendant as executor to describe in the inventory said motor vehicle, defendant did not thereby acquire any title to said property, and as residuary legatees plaintiffs acquired title under the decree of distribution; and (b) the statute of limitations could not begin to run while defendant was acting as executor.  By cross-assignment of error, defendant seeks to have this court affirm the judgment on the claim that the trial court should have found that defendant acquired title by gift inter vivos.

We shall examine first the contentions made in support of the cross-assignment of error.  No claim was ever made by defendant prior to trial that he acquired title to the automobile by gift, and apparently the trial court was not impressed with the evidence offered to show that a gift was made a few weeks before the demise of the testator.

Thre is no presumption in favor of a gift inter vivos. One who asserts title by gift inter vivos has the burden of proving that a gift was made, including the existence of all of the elements essential to its va-

lidity. 24 Am. Jur. p. 790; *Spencer* v. *Barlow,* 319 Mo. 835, 5 S. W. 2d 28. The rule is that "A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos." 38 C. J. S., Gifts, § 15, p. 790. This court held in *Christensen* v. *Ogden State Bank,* 75 Utah 478, 286 P. 638; *Holman* v. *Deseret Savings Bank et al.,* 41 Utah 340, 124 P. 765, that proof that decedent intended title to pass to the claimant during the lifetime of decedent, must be clear and convincing. In *Raleigh* v. *Wells,* 29 Utah 217, 81 P. 908, 910, this court also declared that "Courts watch gifts, *inter vivos* with caution, especially where, as here, their enforcement would result in an inequitable distribution of the decedent's property." In *McNabb* v. *Fisher,* 38 Ariz. 288, 299 P. 679, the Arizona Supreme Court held that the essential elements of a gift are that the donor manifest a clear and unmistakable intent to give the property and pass possession and control.

Defendant relies on *Jackson* v. *James,* 97 Utah 41, 89 P. 2d 235, but in that case there was ample evidence of an intent to make a gift. In this case the defendant did not prove a parol gift by clear and convincing evidence. It is admitted that the testator did not endorse the certificate of ownership. There is a serious dispute as to when the defendant obtained possession of the certificate of title. One of the plaintiffs testified that it was not delivered to defendant until after the death of the father, and that defendant obtained it from his mother on the representation that he would have to have such certificate in his possession to drive his mother to Arizona. Furthermore, the evidence suggests some doubts as to whether the alleged donor was divested of all dominion and control over the property. The conversation testified to indicates that the father was unable to drive the car, and that he was willing that the son should have the use of the car during the father's lifetime to the extent that it would

not interfere with the enjoyment of the testators. The fact that the car was kept on the premises of the testator excep when defendant was using it for his own purposes, tends to make the evidence doubtful and unconvincing as to the claimed intent to make a gift. In addition to this situation, the failure to assert claim of ownership by gift for four years, and the assertion of such contention for the first time when the case went to trial, suggests that the idea of a gift was an afterthought.

It is argued that defendant paid the personal property taxes beginning with the year 1944, and that such payment could be consistent only with a claim of title. If the parents allowed defendant considerable use of the car in view of the fact that he had no passenger car at the time, payment of taxes would be entirely consonant with the exercise of such privilege. Defendant became executor of his father's will in 1944 and as noted hereinabove, as such executor he had a duty to pay the personal property taxes to preserve the assets of the estate. Viewing the evidence in its entirety, and evaluating the testimony of an interested party and his wife, in the light of the numerous uncontroverted facts in contravention thereof, the finding of a parol gift, if made, would lack the support of clear and convincing evidence. Hence, the cross-assignment of error whereby defendant seeks to have title established by a parol gift inter vivos, must be overruled.

It is clear that defendant could not lawfully claim title to the car by virtue of any of the terms of the will. The mother became entitled to a use for the balance of her life, and the remainder was bequeathed as a part of the residuary estate to the plaintiffs. The neglect of defendants as executor to describe the car in either inventory or in the decree of distribution, could neither impair the right of the residuary legatees thereto nor invest defendant with any color of title thereto. The

certificate of title was not endorsed and no contract of sale nor other instrument which could equitably require a decree of a court of equity to transfer title to defendant or to some person other than plaintiffs, was ever shown to exist. Decedent was the sole owner at the time of his death. The provision in the decree distributing the property in accordance with the terms of the will shows an intent that the beneficiaries under the will should receive the property to which they were then entitled. The car was not sold in the course of probate. The failure to specifically describe all of the residuary estate by the language of the decree would not prevent title from vesting in the residuary legatees. The phrase, "any and all other property not now known or discovered which may belong to said estate or in which said estate may have any interest," covers any property not specifically described which was owned by decedent and not disposed of in the regular course of probate.

Even if the executor had an undisclosed intention to claim title to any property not described in the inventory, failure to mention it in the decree of distribution could not operate to prevent title to such property from vesting in the parties entitled thereto by the terms of the will. An executor acquires all personal property left by decedent as a trustee. His failure to disclose the fact that decedent owned it or that he desires to assert ownership for himself, cannot invoke an estoppel against the ones entitled thereto while he acts as the personal representative of the estate; for during the period of probate, as such trustee he has the right and the duty to manage and control the property and to preserve the same, until or unless the same is properly disposed of in the course of probate. One who qualifies as executor becomes a voluntary trustee of the assets of testator's estate, and he holds such assets for the benefit of the devisees and legatees under the will,

subject to the direction and control of the court. In *re Clary's Estate,* 203 Cal. 335, 264, P. 242.

There is no substance to the contention of defendant that the plaintiffs are precluded from asserting indemnity for conversion of the automobile by defendant by reason of failure of plaintiffs to make objections during the course of the probate proceedings. Furthermore, an order of the court settling a final account is conclusive against the beneficiaries of the decedent only to the extent of the items reported. See *In re Evans Estate,* 62 Cal. App. 2d 249, 144 P. 2d 625.

The remaining question is whether this action was barred by the provisions of Sec. 104—2—24 (2), U. C. A. 1943, which bars actions after three years, for the "taking, detaining or injuring personal property, including actions for the specific recovery thereof." Obviously, in view of the fact that defendant qualified as executor one year after the death of the father, action could not have been barred prior to the date defendant assumed the duties of his trust as such executor. When he became executor he assumed the responsibilities of trustee of all assets of the estate. As such trustee he held such assets for the benefit of the beneficiaries under the will, not adversely to them. The rule is, therefore, that the statute of limitations cannot run in favor of an executor until he is discharged by order of court or until he repudiates his trust. In *re Clary's Estate,* supra. In this case the decree of final distribution was not entered until August 18, 1945, and he was not discharged as executor until the following month.

It is pointed out that one of the plaintiffs found out in February, 1945, that title to the automobile was registered in the name of their deceased father. Claim is asserted by defendant that the statute would commence to run from that date, but such conten-

tion must be rejected. Beneficiaries under a will are not required to assume irregularity or misconduct on the part of the executor merely because some property which appeared of record in the name of decedent at the time of death was not described in the inventory. Such use of the car which defendant made was not in itself evidence of repudiation of his trust as executor, for the mother was entitled to the use for the remainder of her life, and she was unable to drive the car and there were occasions when defendant took her on trips. The evidence would not support a finding that the executor at any time prior to entry of the decree of distribution by either acts or declarations repudiated his trust with respect to this estate property. Hence the plea of limitations is not supported by the evidence, inasmuch as action was commenced within three years after entry of the decree of distribution.

Plaintiffs contend that inasmuch as they acquired a remainder in the property subject to a life estate in their mother, they could have no right of action to recover possession until the demise of their mother in September, 1946. Since, as pointed out, the plea of limitations was not otherwise sustained, it is not necessary to discuss or to decide whether the statute of limitations could begin to run against the plaintiffs until the death of the life tenant.

For the reasons herein stated, the judgment of the district court is reversed and the cause remanded with directions to enter judgment in favor of plaintiffs for the stipulated value of the automobile. Costs to appellants.

PRATT, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.