In re Estate of Mary Hackenbroch, Deceased.
Jennie E. Knize, Administratrix of the Estate of Mary Hackenbroch, Deceased, Petitioner-Appellee, v. Lawrence Hackenbroch, Respondent-Appellant.

**Gen. No. 48,616.**

First District, First Division.
April 30, 1962.

156

Galgano & Dillon, of Chicago (Patrick A. Barton, of counsel), for appellant.

Sheldon Belofsky, of Chicago, for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a Probate Court citation proceeding, in which the court found that stocks and bonds standing in the name of the decedent, in possession of respondent and claimed by him as a gift, belonged to the decedent's estate. The approximate value of the personal property in controversy is $70,000, and respondent has appealed directly to this court on the theory that the administrator failed to establish title and ownership.

The decedent, Mary Hackenbroch, about 75 years of age, died intestate on September 23, 1960. Her husband, Paul Hackenbroch, predeceased her on April 23, 1960. Her heirs, including the administrator, Jennie E. Knize, are cousins with whom, the record indicates, decedent was not intimate.

Respondent, Lawrence Hackenbroch, was a nephew of Paul Hackenbroch, decedent's husband. His uncle and aunt maintained a very close and intimate relationship with him. His uncle had bad eyesight, and respondent took care of their purchases, made deposits in a joint account, made checks for bills and, in general, looked out for their welfare. For 15 years he took them to the store each Saturday and was at their home 2 or 3 days a week.

Respondent testified that about March 18, 1958, he and decedent went to the Pullman bank, closed out a bank account and gave up a safety deposit box which stood in her name; that on March 26, 1958, at a birthday party in his honor in decedent's home, decedent and her husband, in the presence of respondent's wife, gave him a brown package, and they said, "Here,

158

Lawrence, this is yours, this is your gift," and he accepted it. After he returned home he examined the contents and found certificates of stock and government bonds, "which I knew they had because I purchased them with them, took them down to buy them." The envelope also contained an old joint tenancy deed to the Hackenbroch home, 7614 South Dorchester Avenue, Chicago, in which his uncle and aunt are named as joint tenants. Respondent further testified that he put all of the items, except worthless oil stock, in his own safety deposit box about April 1, 1958, where they remained until the hearing in the Probate Court.

It is undisputed that on March 26, 1958, the physical condition of Paul and Mary was very good; that the U. S. savings bonds and Acme Steel stock stand in the names of Paul Hackenbroch and Mary Hackenbroch, as joint tenants with right of survivorship; that they bear no endorsement or assignment to respondent; that of the savings bonds, three are for the sum of $10,000 each, one dated October 1, 1957, another dated September 16, 1957, and the third dated March 27, 1958; that all dividend checks received since March 26, 1958, were payable to Paul and Mary and were deposited in a bank account in the name of "Paul Hackenbroch or Mary Hackenbroch or Laurence Hackenbroch, 7614 S. Dorchester Ave."; and that when the dividend checks were deposited in this account the name of "Mary Hackenbroch" was endorsed on them.

For corroboration, respondent offered the testimony of a neighbor, who testified that she had lived two doors from the Hackenbrochs since August, 1957; that she had many conversations with the decedent about respondent, the only one who stood by decedent; that about August, 1958, decedent told her that Paul, her husband, had left everything to Lawrence, because he was an orphan; that decedent told her she had no rela-

tives whatsoever; and that she saw respondent working around the Hackenbroch home on Saturdays and during the week.

For further corroboration, respondent tendered the testimony of his wife, Helen, who was present on March 26, 1958. On objection, the court rejected the tender and remarked that while respondent's wife was disqualified under the Evidence Act, the court could call her as a court's witness, but as her testimony would be substantially the same as that of her husband, it would not change the court's opinion as to the merits of respondent's claim.

At the conclusion of the testimony and after an extended discussion of the facts and the law with the attorneys, the court found there was not sufficient evidence to indicate a valid gift, because the evidence was not clear and convincing, and that the assets in controversy belong to the estate of the decedent. The court further found respondent to be the owner of a bank account which stood in the three names "as joint tenants with right of survivorship."

Respondent contends that uncontradicted proof of delivery by donors of unendorsed certificates of stocks and bonds, accompanied by expressions of donative intent, and acceptance by donee, establishes a gift inter vivos; that possession of unendorsed certificates of stocks and bonds by respondent is evidence of a gift inter vivos; and that in a citation proceeding to recover property from a claimant in possession, the burden is on the administrator to prove title in the estate. We have examined the authorities cited in support of these contentions, but we are not persuaded that their application to the undisputed facts here results in a different conclusion from that of the trial court.

Negotiable instruments can be the subject of a valid gift without endorsement or written assignment by the payee, if delivered to the donee by the

payee with intent to transfer the title. The burden of proof of the gift is on the donee to prove all essential facts of a valid gift. The essential facts are the delivery of property by the donor to the donee with intent to pass title, and the proof to sustain the gift must be clear and convincing. Mere possession by one claiming property as a gift, after the death of the owner, is insufficient to prove a valid gift. Rothwell v. Taylor, 303 Ill 226, 230, 135 NE 419 (1922); Storr v. Storr, 329 Ill App 537, 543, 69 NE2d 916 (1946); In re Estate of Jarmuth, 329 Ill App 619, 630, 70 NE2d 336 (1946).

■ ■ In this citation proceeding, brought under the Probate Act (Ill Rev Stats 1959, c 3, §§ 335–339a), the administrator made out a prima facie case of ownership of the stocks and bonds by proving that on their face the securities bear the names of the decedents as owners and are not endorsed by either. Section 21 of the Uniform Stock Transfer Act (Ill Rev Stats 1959, c 32, § 436). As the law never presumes a gift (Bolton v. Bolton, 306 Ill 473, 483, 138 NE 158 (1923)), the burden then rested on respondent to go forward with clear and convincing evidence of the gift. This was especially so where a confidential relationship existed between the alleged donors and the respondent donee. In re Estate of Vercillo, 27 Ill App2d 151, 158, 169 NE2d 364 (1960); In re Estate of Jarmuth, 329 Ill App 619, 631, 70 NE2d 336 (1946).

■ Where the court, in the careful exercise of its discretion, determines that the testimony of a respondent interested in the outcome of a citation proceeding "is necessary to a full and fair presentation of the facts," the court should examine the respondent under oath. Under such circumstances the respondent becomes the court's witness, whether examined by the court or the attorneys for the parties, and respondent's testimony as to statements made by the decedent is competent to support respondent's claim of ownership

161

of the property in litigation. (In re Estate of Hill, 30 Ill App2d 243, 249, 254, 174 NE2d 233 (1961).) Nevertheless, for all practical purposes, the testimony of a respondent must be considered and weighed as that of an adverse witness. Courts lend a very unwilling ear to statements by interested persons about what dead men have said. Such evidence is subject to great abuse and will be carefully scrutinized as well as considered with all other evidence in the case. Keshner v. Keshner, 376 Ill 354, 363, 33 NE2d 788 (1941); In re Estate of Baumgarth, 23 Ill App2d 319, 326, 163 NE2d 201 (1959).

██ ██ Respondent argues that his testimony as to the gift, properly admitted here, must be considered as true if there is no countervailing evidence. (Chance v. Kinsella, 310 Ill 515, 523, 142 NE 194 (1924).) We do not agree. In a citation proceeding, the sole testimony of a donee as to what was done or said to him by a deceased donor is of questionable credibility and should be carefully scrutinized, as direct disproof of such declarations and conduct of the deceased donor is rarely possible. Such testimony should be considered, but sufficient corroborative evidence is required so as to make the proof of a gift clear and convincing. Rothwell v. Taylor, 303 Ill 226, 230, 135 NE 419 (1922); Keshner v. Keshner, 376 Ill 354, 363, 33 NE2d 877 (1941); People ex rel. Williams v. Wismuth, 2 Ill App2d 109, 117, 118 NE2d 881 (1954).

██ In the instant case, the corroborative evidence consists of possession of the securities, and the testimony of a neighbor as to statements by the decedent of appreciation for services rendered and that "Paul left everything to Lawrence because he was an orphan." The rejection of the tendered corroborative testimony of respondent's wife was proper. She was an incompetent witness because her husband was directly interested in the outcome of the proceedings. Heineman v. Hermann, 385 Ill 191, 195, 52 NE2d 263 (1944).

■ The administrator points out that the purchase by decedent of the $10,000 savings bond dated March 27, 1958, in the name of both decedents, indicates a lack of donative intent as to that item; that it is not reasonable to conclude that decedents made a gift to respondent on or about March 26, 1958, of a savings bond purchased in their names on or about March 27, 1958; also, if the bond was issued and delivered on March 27, it could not have been included in the purported gift of March 26.

The trial court, although sympathetic to respondent's claim, in finding the evidence of the gift was not clear and convincing, remarked: "There is too much conflicting evidence for me to find otherwise. . . . Here we have a situation where the decedents, during their lifetime, both turned over their entire property and entire assets to this claimant. Yet, the testimony was brought out that they did not actually relinquish any control over it. They maintained control over the securities. There is no evidence to the contrary. They maintained control over the dividends. They still had a right to go in and draw them out. The respondent has claimed that he received the real estate as a gift, but there is no testimony to the effect showing that they relinquished actual control of the property." We believe these are fair observations of this record.

We conclude that the trial court was correct in finding that the evidence in this case which was intended to prove a gift was insufficient for that purpose and falls short of that clear and convincing proof which the law requires.

For the reasons stated, the judgment order of the Probate Court is affirmed.

Affirmed.

BURMAN and ENGLISH, JJ., concur.